The last case for argument is 14-1174, Gaymar Industries v. Cincinnati Sub-zero Products. Mr. Berger, whenever you are ready. May it please the Court. Before we discuss the District Court's errors, I need to identify and address an error in Cincinnati's Cincinnati Sub-zero's blue brief. On page 33, the quote after the site to the nitwave case says, vacating and remanding lower court decision denying attorney's fees award under copyright statute, because it was unclear whether the District Court had employed the Fogarty even-handed standard. That word denying... I'm a little behind you. You're looking at blue brief 33? Page 33. Okay. Sorry, Your Honor. The word should be regarding lower court's decision regarding attorney's fees award. I recognize this mistake last night. I'm bringing it to this Court's attention. I take responsibility for it. I apologize to the Court, and I apologize to counsel here. CSE's reexamination delivered a knockout punch to all the asserted claims in this case. This case is exceptional because Gaymar already knew about the fatal prior art when it filed this lawsuit, and because Gaymar continued to pursue a preliminary injunction even as its case became unwinnable. Under Highmark, all aspects of a District Court's Section 285 determination are subject to an abusive discretion standard. Nonetheless, Highmark also states that a District Court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In this case, the District Court did both. This Court should reverse and remand with instructions to the District Court. So what did the District Court do wrong? The District Court found and decided the case almost entirely based on CSE's conduct. Well, the District Court did say that the claims were not objectively based last night. The District Court, in applying the prior Brooks Furniture Standard, said that the CSE's failure to file a summary judgment motion led to the conclusion that CSE could not establish objective baselessness under the Queer and Convincing Evidence Standard. So here we have the reference to a procedure that did not occur, that is, summary judgment. Even under the prior Brooks Furniture Standard, the objective baselessness was determined based on the case that was actually litigated. Now, we're not saying unequivocally that there is never a situation where failure to file a summary judgment motion would have any effect. But here, there was never a case management order. There was never general discovery. There was never a Markman hearing. Cincinnati Sub-Zero's reexamination request was filed within 10 days of that first initial hearing. There's no faster way that this case could have been adjudicated other than via reexamination. So this is not even an argument that Gamar made. So this is an argument that's tied to a procedure that did not occur. It's tied to a standard which does not exist anymore now that the Brooks Furniture Standard couldn't revenue amendment which is a concrete charge under the  Now, on a more holistic sort of case, also reliant on the representations you had made with respect to the law regarding preliminary injunctions. Yes, Your Honor. The district court, as I said, based its decision primarily on CSE's conduct and it cited four examples. Three and four relate to purported misrepresentations to the court and one and two relate to purported shifting legal theories. It's CSE's position that all of those examples are based on underlying errors. Relative to the misrepresentations to the court, that conclusion is based on the district court's view that the patentee, in this case Gamar, had no obligation to address validity in its preliminary injunction brief. And is it your view that our law requires that when you file for a preliminary injunction, you have to establish that the patent is valid in order to get that? No, Your Honor. Not that you have to establish validity. We understand that the Gonzales case from the Supreme Court says that the burdens at the preliminary injunction stage track those at the trial. We understand that. But here, there's no addressing of the issue of validity at all. When we say address, we didn't say anticipate and refute the specific details. Well, what did you want them to do? They cite their patent, their patent is presumed valid, is it not? And the burden is not on them, but on you to prove invalidity. So what were they required to do? They should have at least done what Apple did in its case against Samsung, and that was identify the issue. I don't understand. Go ahead. What does identify the issue mean? To say that we believe we will be able to withstand any validity issues that come up. That one sentence you think would be adequate to prove whatever their burden is? I think that's my problem with your position, and I understand it, which is there are dozens of different ways to attack the validity or patentability of a patent. Are you saying that the patentee in the preliminary injunction setting has to say this patent, we believe this patent is valid against any imaginable validity challenges such as 101, 102, 103, 112, 1, 112, 2, and so forth. Is that what you are expecting? That's not what we're expecting. So what's wrong with doing what it seems like most of our cases have suggested is the appropriate task, which is to say here's our theory, and if they have a validity problem, they'll let us know, and then we'll respond to the particular claims of invalidity that they raised. What's wrong in this case, Your Honor, is because they not only omitted any reference to validity with respect to the first element, that of likelihood of success on the merits, but they also omitted it with respect to the second element. Let's just go back to the question of whether you are actually saying that a patentee has an obligation in the preliminary injunction setting to say right at the outset in the preliminary injunction motion itself, our patent is valid against all, we believe, against all possible challenges, including the following, including but not limited to the following. That's not what you're, you don't really want to make that argument, do you? I'm not arguing, I'm not saying that they have to anticipate and refute or identify section 101. Or do they just have to have a sentence saying we believe our patent is valid? That would at least inform the court that the issue is coming, and when you get to the... Well, how do they know that the issue is coming? They don't know that validity is going to be challenged. Well, in this case, there was a letter that told them that validity would be challenged. Letters say many things, but why isn't it, I'm not understanding what exactly it is you're suggesting that is the important step that the patentee has to take in a preliminary injunction. Is it just the one sentence saying we believe the patent is valid? Well, at least with respect to what Apple did is something that would have changed the scenario here. But with respect to the second... I don't know, well, can you answer, I don't know what you're referring to in Apple, but unless you're citing a case that we have, you were required to do that. I don't know what difference it makes what Apple has. Apple cited the line from Titan Fire that says that the first element of a preliminary injunction requires a patentee to establish a clear showing of validity and infringement, or at least it borrows from the language of Nutrition 21. But the issue really comes into play when you get to the second element. Gamar asserted entitlement to a presumption of irreparable harm based on infringement of a valid patent. That's what the Pfizer case says. That's what Nutrition 21 says. They left out the word validity. So if a party is asserting entitlement to a presumption of validity, the party ought to identify the elements that are required for that presumption. I'm having difficulty following this whole discussion. The question is not what the law is. The question is whether the district court made an error in saying that you made a misrepresentation. What exactly is it that you said to the district court that the district court found to be so problematic? What is the exact language? CSE said that they were obligated to address validity, and CSE cited Nutrition 21 for that proposition. Nutrition 21, this court reversed the granting of a preliminary injunction because of the absence of findings of fact. But in the reversal said that the district court had misplaced the verb. What strikes me is that whether what you said was correct or not, which is what we've been discussing for the last few minutes, isn't the issue. The question is whether it was a misrepresentation to the district court. I would have thought that your position about what you were saying in the district court was pretty clear. It may not have been correct, but the question is whether that was sanctionable or a misrepresentation to the district court. You can argue, you can stand there and argue about what their burden was, but that doesn't seem to be the issue. The issue is whether you said something that was a misrepresentation. There's two aspects of this, two areas of law. From our perspective, Nutrition 21 required them to at least address it. But secondly, it's not misconduct to assert that position. CSE had a reasonable belief and cited case law and cited examples for the basis of its reasonable belief. It had no notice from the court that the court considered that to be a misrepresentation or misconduct. It never had a chance to brief it, and we don't know what standard the court applied in asserting that it was a misrepresentation. So we're not aware of a case where the specific argument occurred as to what should have come right out of a certain case. I would have thought you would come here prepared to say we said these things and they weren't misrepresentations. You seem to want to re-argue the question of what the patentee's burden was on invalidity. That's not the issue here. The issue is, did the district court use its discretion and find that you made misrepresentations? Not this one, but the others as well. That's the issue. We agree with that, Your Honor. We did not have an opportunity to address that issue with respect to the district court before the finding of the ruling on Section 285. It struck me in looking at the way the district court framed its order that the district court made two separate determinations. One, that this is not an exceptional case. And second, that this is not an appropriate case for attorney's fees, even if I were to determine that it was an exceptional case. That seems to be what the court is saying. You'd agree with that, I think. That's right, Your Honor. But now, in the first part of that exceptional case determination, the district court did not lean heavily on the problem of your purported litigation misconduct. That appears mainly, I guess it's on page A26, in the second portion of the analysis. There is a reference, I think, at A14, down towards the bottom, of if anyone has demonstrated lack of candor on this point at CSD, and a reference to the discussion of the burden on preliminary injunction. But most of the first portion of the case seemed that it was addressed to other issues, including the strength or weakness of the case on which the judge found against you. So it strikes me that the issue of the misconduct with respect to the various points that are pointed out on page 26 doesn't even really arise unless we conclude that the judge was wrong about exceptional case determination. Is that a fair statement? Yes, Your Honor. But what happens with the second report is the judge decided them in reverse order. That is, decided would not award. And the second report is page A36. He specifically relies on the unclean hands as a basis for the exceptional case determination. Right. The reference to unclean hands in the second report is the first use of that term by the court. I understand, but he's referring to the misrepresentations there when he uses that to make the exceptional case determination. That's right, Your Honor, but he never assessed. The first time around he didn't seem to relate the two so much, but the second time around, the final order, he relates the two, right? Your Honor, but he never assessed the substantive strength of the case or the position. I think he did, but the question is whether he also took into account incorrectly some misrepresentations which don't rise to the level of misrepresentations. The issue from CSE's perspective is the weight, the undue weight, according to CSE's conduct compared to the litigation misconduct of Gamehart, which was proved by clear and convincing evidence. And Section 285 serves as a deterrent to prevent the bringing of unwarranted cases. Oxhane lowered that standard so that it could serve the deterrent purpose, yet by making the standard more flexible. Here we have a situation where the standard is so flexible there's nothing to keep a district court from picking out pieces of conduct, deciding that that negates the exceptional nature of the case, and using it for both determinations. There's nothing wrong with the district court saying if you engage in litigation misconduct, I'm going to take that into account in the totality of the circumstances in determining whether this is an exceptional case. There's nothing wrong with that under Octane, right? We don't disagree that the court can consider that, but it's a matter of how much weight it should be given. I would have thought you would say it's a matter of whether it happened or not. Well, the court asked for the conduct... I don't want to argue that you didn't make misrepresentation. I see that I'm well into my rebuttal time. Do you want to respond to what their site said? Your Honor, it's CSE's view that it defended itself in this case against an aggressive patentee, and it did its best, and it negated this patent as quickly and as efficiently as it could. The court and the parties benefited from that. It later found out that Gamar had withheld the fatal prior reference during discovery. The effects of that were never addressed in the court case. It was only in the fee motion that these issues of misconduct, purported misconduct, came up. And so the court is entitled to weigh all the conduct. Yes, it's part of the totality of the circumstances, but Octane says that courts should exercise equitable discretion in accordance with the considerations we have identified. Okay. I think we have an argument on that. Why don't we score two minutes of rebuttal. Good morning. May it please the Court. Gamar Industries asks this Court to affirm the district court's decision below. It strikes me in looking at the district court's description of litigation of misconduct that it is exceptionally thin, and this can be a problem sometimes in district courts. I don't read the record here as showing that they made misrepresentations, and if I were to conclude that, wouldn't I have to send this case back for the exceptional case determination given the district court's heavy reliance on what it called unclean hands? Let's assume that I find the district court abuses discretion in finding that there were misrepresentations here. If that were the result, wouldn't we have to remand to have the exceptional case determination revisited? I don't believe so, Your Honor, and the reason I don't believe so is because I agree with you that other than Cincinnati Sub-Zero's misrepresentation, the litigation misconduct record is very thin. There's one instance cited by the Court that actually the Court did not determine by Gamar's misconduct. It would be our position that the record could remain exactly as it is and could be affirmed as is. I know Cincinnati Sub-Zero disagrees with the position that misrepresentations were made. We obviously disagree with that in our brief. But you're not answering my question. Try to answer my question. Let's assume that we were to conclude that district court abuses discretion in finding there were misrepresentations. Would we have to remand to revisit the exceptional case determination? Assuming that you found there was an abuse of discretion, which I don't agree with, yes, you would. Okay. You would. So why should we not go there? Well, the reason you shouldn't go there is multifaceted. We believe there were, in fact, misrepresentations by Cincinnati Sub-Zero. Cincinnati Sub-Zero claims today here in this Court that it had no notice that it was being accused of possibly misrepresenting the state of the case law in preliminary injunctions, and that's simply not true. That issue was presented over and over and over again at the district court. Cincinnati Sub-Zero had absolute knowledge that Gamar disagreed with its interpretation of the burden on a preliminary injunction. But that was only one of three things that you found were misrepresentations, right? Yes. I mean, the first thing, we need to identify our own expert in the technology. They said at the beginning, and then they said later on, we maintain the position at the outset that we don't need someone skilled in the art. I mean, is that a misrepresentation really? I believe so, yes. Why? Well, because Cincinnati Sub-Zero was giving the Court the impression that there would be a full-blown validity battle in front of it. At the same time, it represented that it was going to take this matter to the Patent and Trademark Office, which it did. Gamar presented expert testimony, both on its affirmative preliminary injunction papers and on its reply. At no time, despite saying that it was going to obtain an expert, did Cincinnati Sub-Zero ever do so. Wait a second. They said the technology is generally understandable. It does not require an expert with technical skill in the art. How is that inconsistent with the statement that they said earlier, we need to identify an expert in the technology? Even if they thought it was irrelevant, they might feel that they needed to identify an expert. What's the misrepresentation? I believe it's a pattern of conflicting positions before the District Court. How is it a conflicting position? They say an expert isn't needed, but we need to identify an expert just in case it is needed. How is that an inconsistency? I believe it's giving the Court the impression that, on the one hand, we need an expert, on the other hand, we don't, and leaving the Court in a position to wait and see what's going to happen. The standard that you're advocating would result in a misrepresentation in probably three-quarters of the oral arguments that are made before us. Fair enough. To continue to respond to your inquiry, Judge Dyke, the Kilworth Declaration was another instance in which the Court had found that Cincinnati Sub-Zero had made misrepresentations to the Court. The motion to strike Mr. Kilworth's declarations was granted in part. That is not on appeal before this Court. Cincinnati Sub-Zero has not contested the propriety of the striking of the Kilworth Declaration below. Here, on appeal, Cincinnati Sub-Zero says that... He argued that it would have been obvious to a person of skill in the art to minimize patient discomfort by doing this, and then later on, he's not someone who's skilled in the art. I mean, sometimes people make arguments even though they don't have the personal basis for making the argument. I don't understand how that's a misrepresentation. Well, it's a misrepresentation, Your Honor, because obviousness requires a person who has skill in the art. Sure, so maybe you discount the guy's statement, but that doesn't mean he's not, by making the statement, he's not representing that he's skilled in the art, is he? Well, in some ways, yes, and I'll explain why. Mr. Kilworth's declaration on preliminary injunction was challenged by a motion to strike. So Cincinnati Sub-Zero was on notice that Gamer was contesting the propriety of Mr. Kilworth's declaration and was also contesting that he was skilled in the art. Fast forward a couple of years later when the motion for fees comes up after the PTO action is complete, after preliminary injunction is denied, after Cincinnati Sub-Zero moves to reinstate the case, and Cincinnati Sub-Zero does the same exact thing, even while being on notice of, frankly, very clear case law that does not permit Mr. Kilworth to make these representations to the court. Did the court really misunderstand what the position was? He was arguing that there was a need to address invalidity, either by relying on a presumption or saying something about it. I mean, is that completely incorrect? I mean, you may be able to rely on a presumption, but so what? Right. I don't know whether the court really misunderstood, but I don't think that's the standard. I think the standard is whether you proffer something that you know is not in keeping with the case law and is not proper under what the requirements are. And as I already stated, Cincinnati Sub-Zero was on notice of what the requirements were because Gaymar had already challenged Mr. Kilworth. I do want to address a few points that Mr. Berger made during his argument. He said there was no faster way to adjudicate this case than taking this patent into re-exam. And the record bears out what actually, it was not contested that at that time re-examination before the PTO took 42 months, on average. Some were longer, some were shorter, but that was the average. Mr. Berger tells this court that they were trying to be quick and efficient about adjudicating the court action as quickly as possible. Yet Cincinnati Sub-Zero filed for re-examination and waited three months to move to stay. And during that three-month period, most of the discovery in this case occurred. This case's timeline was compacted into a five-month period that basically ended in November of 2008. And then there was a long period where nothing happened. It's not as though there's this impression, I think, that Cincinnati Sub-Zero wants to give this court and certainly wanted to give the court below that Gamar, after the preliminary injunction briefing was complete, was continuing to aggressively pursue its preliminary injunction. And that's simply not the case. The parties were at the PTO. That's where they proceeded. No further discovery occurred in the court below. There was no expense or resources that were allocated to the district court. The parties simply waited for the court's decision. And that came in November 2009. So it was almost over a year until that decision issued. So there was no rapid pursuit of the continuation of this case. Nothing else happened. And similarly, there was another period of dormancy where the parties basically waited for determinations either from the PTO or from the court. So there is this false impression, I believe, that Gamar continued with fervor and blindly to pursue its rights under the patent. And that's simply not the case. The rule that Cincinnati Sub-Zero wants this court to adopt is you lose at the PTO, your case is exceptional. And there's no case law that supports that. It actually defies logic because every time a patent is invalidated, parties would be racing into court to seek and award a fee. Return, if I could, to the issue that I was discussing with your opposing counsel. The relationship between the two orders in this case, the first order and the reconsideration order. The first order does appear to rely principally for the exceptional case determination on the court's conclusion that the case was relatively close. A couple of other factors discussed. On reconsideration, the court talks about clean hands. How do you read, do you understand that to be the court taking a different tack in the second order from the tack taken in the first? What do you think the relationship is between the two orders? Well, I think Your Honor correctly identifies that the court did a relatively detailed analysis on the merits of Gaymer's position in the first report. Right. Now, of course, that was at least putatively under the pre-highmark octane standard. Yes, it was. Brooks furniture and so forth. Right. When the court came back, the court talked briefly but did talk in the context of exceptional case about the clean hands. What do you think is the relationship between the two orders? I think the two orders are companions. I think the two orders form the fulsome decision of the court. I don't think Cincinnati Sub-Zero necessarily disputes that since the appeal refers to the first report and the second report and they're treated almost as one because, of course, what the court was doing in the second decision was going back after octane fitness had issued to think of any other further considerations that might be warranted that weren't considered in the first report because the intervening change in the law between the first report and the second report warranted further consideration. Let me put the question this way to you. Suppose we were to conclude that the court was wrong in finding that there were unclean hands on the part of CSZ. Wouldn't that be sufficient to require that this case be sent back because that was emphasized, at least to some extent, in the second order although it was not in the first? No. You said the opposite in response to a question of mine 20 minutes ago. You could get yourself into trouble if the court was just as short with that kind of shit. Fair enough, Your Honor. What Judge Bryson's question focused on is the relationship between the first and second reports. And the first report, I think as you've recognized, Your Honor, putatively applied the Brooks Furniture Standard. In reality, what it applied was a more flexible and holistic approach even pre-octane fitness. So the considerations that the court had in the first report were actually octane fitness considerations. First of all, I suppose the court could simply have said I already applied octane in the second order and stopped there. But instead, it seemed as if the court felt obliged to say more and did, in fact, say more. And where I'm trying to go with this, is there an argument and are you making the argument that regardless of what was said in the second order, the first order is sufficient, standing on its own, to justify an affirmance in this case. And even if there is error in the second order with respect to the clean hands issue, the first order should be sufficient to justify an affirmance. I do believe so. How can that be? In the second order, he suddenly is faced with octane. The objective reasonableness isn't sufficient to dismiss the claim for attorney's fees. And the court goes on and says, well, the significant thing here in the fatality of the circumstances is unclean hands. And so that was obviously a significant factor in the decision not to find an exceptional case, right? It was a factor, absolutely. So how is it that we don't have to remand if we find that he shouldn't have relied on that factor? Because I believe the other factor, standing alone, would sustain the court's decision because the record does not warrant any other finding. Yeah, but the Supreme Court itself in octane said if there's an error of law or fact, a fairly erroneous fact in the decision, that we have the obligation to look at it and set it aside and require that it be reevaluated. That doesn't mean you lose if we remand. I understand that. But how can we, when he placed such heavy reliance on the unclean hands under the octane standard, how can we avoid remanding? I appreciate the court's consideration of that factor. Do you think a reason we could avoid remanding is that the request, the order for reconsideration, before they reached the last portion, which I think was what we're focusing on, was that it does not have clean hands sufficient to render an exceptional case. In the preceding section, am I right or wrong, on page 35, A35, the first thing they do in A seems to be that even accepting this as an exceptional case, attorney's fees are not mandatory. And it goes through some discussion of octane or whatever, and then it says, therefore, irrespective of whether this is an exceptional case, CSC was not entitled to an award of attorney's fees. Are we free to rest on that, even if there's error or some need to remand with respect to its analysis on whether or not it meets the octane standard? I believe you could rely on that, Your Honor. The reason why I believe so, both the first and the second reports contain that analysis, that in any event, even if this were an exceptional case an award of fees would not be warranted. Go ahead. It's okay. Thank you. I don't know how important this unclean hands or litigation misconduct issue was to the court, but the court does seem, in the second order, to mention it in connection with both prompts, right? I mean, I think on page 835, there's a reference to about line 6 of the opinion to I detailed numerous instances of litigation misconduct and concluded and so forth. That may not be driving the conclusion, and that may be an issue that we have to resolve, but it does seem at least that that determination is not totally immunized from challenge based on the absence of a reference to the unclean hands issue, right? Well, it's not totally immunized. I agree with you. I do think that remand would be unnecessary, and I believe it would be unnecessary, frankly, under a decision that recently issued from this court, which was an affirmance of a very similar case without opinion, real time, which came down from this court a couple of weeks ago, that involved very similar circumstances of claims of discovery, defalcations, and claims of improper privilege assertions and claims of misrepresentations back and forth. And the district court said that was simply not enough to warrant an exceptional case award, and this court agreed. So I think it actually would be consistent to rely on the finding of no fee award in order to simply affirm, because there was a specific finding of no fee award. And wasn't that particularly in the first opinion and in the second opinion as well also based on misrepresentation? Yes. Yes. I see my time is well up. Thank you. Thank you. To keep credit keeping us a little even, we'll increase your rebuttal time for four minutes if you need it. Opposing counsel stated that CSE had been on notice of these alleged misrepresentations. My statement was notice from the court. GAMAR made all sorts of allegations of misrepresentations. Our point was prior to that denial of attorney's fees motion, CSE was not on notice from the court. Relative to the supplemental declaration from Mr. Kilworth, it's very clear that that was submitted because of this court's Theracense decision, changing the law relative to inequitable conduct, and because there were four new references which were part of the inequitable conduct claim that CSE submitted. When CSE submitted its second amended complaint, it spelled out with detail, as required under exergen, as to each of those six separate references. And that's what Mr. Kilworth was opining on. The district court never identified the scope of Mr. Kilworth's testimony and indicated that he was enabled to testify at an office practice and procedure. The court also never considered this court's decision in Ohio-Willowood, which states that, but for materiality, is decided from the perspective of the examiner. Mr. Kilworth has testified in numerous cases. He's an expert in examination, PTO examination, and that's why he was proffered. And if you look specifically at paragraph 25, which is the paragraph cited for this example of misconduct, Mr. Kilworth paraphrases what the examiner said during the re-exam, and then he restates it. He applies it to the real world relative to the MT2 manual and its description of automatic and manual operation of the prior art device. This is exactly the type of declaration that was found that was the basis for the inequitable finding as the Palms Declaration in the Worldwide case. Do you view the second order of the court as being supplemental to the first or as displacing it? I see it as being supplemental, part of the same process, so we should take the two orders together when we look at the questions of exceptional case and attorney's case. I believe that's correct, Your Honor, because the second report refers back multiple times. For instance, look at the closeness of the case in both the first and second. The only thing cited is the failure to file summary judgment motion, which from our perspective, after octane, is not an acceptable factor to be considered. It violates the principles of the Patent Act. Just as the line of Fogarty cases in copyright realm have identified factors or guidelines for the court's exercise of equitable discretion, there are things that courts should consider and things that should be accorded more weight. In the Second Circuit, for instance, the objective unreasonableness of the losing party's case is accorded substantial weight. We made this argument to the district court. Under the Lanham Act, you mean? No, under the Copyright Act. The Fogarty line of cases has been applied in the Second Circuit, and in fact, the Western District of New York has applied this principle. In order to assure compliance with the Copyright Act, they accord substantial weight to the objective unreasonableness of the losing party's case. Our view is that octane grafted that entire body of law not from a binding perspective, but from a persuasive perspective, into the patent field. And in the copyright cases, when courts don't follow the Fogarty factors or consider those guidelines, those cases are remanded. One final comment is it is CFP's position that it did not engage in misconduct. It did not make misrepresentations to the court. Thank you.